Good morning. My name is Robert Amidon. I have been asked to argue the case on behalf of the appellants, the Kellers, whose son died on August 15, 2003, in a high-speed police chase. The appellants allege below and to this court that for the police to initiate a high-speed police chase during heavy congestion and gridlock on a weekend in Los Angeles City streets, knowing the obvious danger to the public, certainly shocks the conscience and ought to shock the conscience. Sovereign immunity should not apply to a municipal task force on the issue left undecided by this Ninth Circuit Court in Hervey v. Estes in 1995. But, counsel, let me ask you a question about the State. Can you cite to me any case that says a State agency can lose its State identity and, consequently, its sovereign immunity by acting with a local entity to achieve a common goal? This is not a case where they had an agreement where they intended to create a separate legal entity, but the State was simply involved. I can't find any case that says that. No, Your Honor. I haven't been able to find one either, which is why I believe the issue was left open in the Tahoma Narcotics Enforcement Team case in which what we've argued is that you have a municipal task force. We know it is because of the fact that the CHP memo of April 16, 2003, described this experimental three-month time period to help the CHP see whether or not they could integrate and be effective in deploying their assets to assist the LAPD and the LASD in what are, without doubt, city enforcement action. This is not on the highway. This is not on the freeways. It very clearly said in this April 16, 2003, memorandum from the CHP, which is admissible evidence, etc., that this would be a three-year trial period. I cannot cite you any case anywhere in the United States where any appellate court, other than in the Hervey v. Estes case, hinted at the fact that certainly you can't allow a state agency to integrate with a municipal task force and maintain its sovereign immunity. If, in fact, that were the case, then you would think that everyone would want the CHP to be a part of their task force and would put them out front in all of the law enforcement efforts because of their sovereign immunity, and they would be able to just sit back and take reports, etc. So I have answered your question, Your Honor, the best that I can. Of course, the LAPD ---- Here's another one and a different one. Yes, ma'am. Where is there an allegation of intent to harm? It may have been stupid. I mean, it may have been stupid. But where can one find an intent to harm, which, as I read it, is what the Supreme Court requires? Yes, Your Honor. In answering that, let me state that as I read Sacramento v. Lewis in 1998, the U.S. Supreme Court has stated clearly that if I can prove to a trial court that the police officer had the intent to harm the public and said, I'm going to chase this fleeing felon or this ---- No, I agree. In fact, Sacramento v. Lewis said that you could bring a 1983 action if you alleged that type of intent. And where is that alleged here? We have alleged what is a lower standard called deliberate indifference. Well, yes, but why does that cut it under Lewis? Because I'm assuming all intent can be proved either directly from the mouth of the officer as to what he intended or it can be derived from circumstantial evidence. If I can ---- if, in fact, you saw a car plow into the west ---- But what I'm saying is that deliberate indifference is not enough to allege. That's what was alleged in Lewis. And the Supreme Court reversed because they said deliberate indifference isn't enough. You have to have an intent to cause harm. I didn't read ---- I'm sorry. And she says there's no allegation that would meet the standards set by Lewis. I didn't read Sacramento v. Lewis saying that that was in the underlying facts of deliberate indifference. I have derived the deliberate indifference standard from a whole host of other Ninth Circuit cases in other areas. The facts, if there is a fact-intensive discussion of this analysis of intent and reasonable conduct, that does bring into play not just Sacramento v. Lewis, but it does bring into play then the reasonable conduct standard that Justice Scalia set forth in Scott v. Harris because it took a look at the chase in that case that was supervised constantly over the radio before Victor Harris was rammed off the road. If, in fact, this municipal task force had a supervisor that had said to Sergeant Frias, hey, this car is stopped, just pull in front of it and block it or ram it, or hey, don't follow it at all other than radio to the police that were just a block ahead of you, et cetera, then you would have had a situation in the environment that Justice Scalia described that was heavily congested, an enormous amount of traffic, both cars and pedestrian, versus the reasonable conduct that the Supreme Court viewed in that videotape. I maintain that like that videotape in Scott v. Harris, we actually have the trial testimony of Sergeant Frias in our case because the people did prosecute Antwon Jones for murder, in effect, the manslaughter that occurred in the high-speed police chase. In there, Sergeant Frias testified that he was an asset of a municipal task force, and that to me is probably the cognizable legal theory that should be allowed in this case. I have alleged the only intent that I know how to allege other than taking his deposition wherein theoretically he could testify that I had the intent to harm the public that night. I indeed had a zero-tolerance policy told to me by the CHP, and I acted on it for what was a minor traffic infraction. I knew that by initiating that high-speed chase that I was going to harm somebody in the public. Now, that is a theory that is nothing more than me talking to this panel this morning, and so I ask for the respect from your honors that I have done the very best I can in connection with Sacramento v. Lewis. The facts in there are different, and I've explained that both in the opening brief as well as in the reply brief because of the intervening discovery that we had with the memo. I don't know if I've done the best I could to answer that. If you read the April 1603 memo from the CHP, again, you will see that no additional training was necessary. There was no need to try to train the CHP assets in the non-pursued policies that had been enacted by the LAPD and the L.A. Sheriff's Department. They were to pursue on city streets alone, and the CHP was to turn it over. They disobeyed all of that pursuit policy that the CHP itself initiated. I would argue that a person shouldn't pursue that type of a serious and unreasonable risk situation when there's harm to the public in the very circumstances in which Aaron Keller and his passenger was killed. I would balance that against the seriousness of the offense. Finally, I would thank you very much. My 10 minutes has ended. Thank you, counsel. Good morning. May it please the Court, Deputy Attorney General Donna Dean, on behalf of the defendants' appellees, State of California, California Highway Patrol, and the Highway Patrol officers, Frias and Wibenga. I have just a couple issues I would like to address with you, and I'd also like to reserve three minutes for county counsel's time to also address the Court. So you don't run out of time. I just have to ask you one question. You seem to say that Plaintiff failed to allege the intent to harm Aaron Keller, but isn't the standard following Lewis and Onassian that an officer must intend to harm someone, not a specific person? How could you ever prove they intended to harm a bystander, for instance? Well, even under that scenario, there's no allegation of an intent to harm either Antoine Jones, the suspect, or Aaron Keller, the decedent, in this case. And I also want to focus on the proper standard here, because you've heard counsel argue several different standards. And under the 14th Amendment and under County of Sacramento v. Lewis, in a police pursuit case, in the specific case of a police pursuit, under the 14th Amendment, that standard is the intent to harm, not reasonableness, not deliberate indifference. And as one of you pointed out, in Lewis, the Court rejected the deliberate indifference standard in favor of the intent to harm. In the Onassian case, too, the Court noted that a police officer who's pursuing a traffic violator is trying to remove a dangerous driver from the streets and is not intending to harm in that situation. So it may be a very — it is a very difficult standard for a third-party bystander to allege and prove a 14th Amendment violation. And County of Sacramento v. Lewis has a very good explanation of why the deliberate indifference standard should not apply because of the requirements of a police officer on the spot to make snap decisions and snap judgments. And this was a pursuit that lasted only about a half a mile, according to the evidence that's been submitted by plaintiff's counsel. And there wasn't — there just simply wasn't a lot of time in there to deliberate. And that's why the deliberate indifference standard shouldn't apply to a police pursuit case. Kennedy. Would it have been any different if the pursuit had lasted longer? I don't believe so. I think that you — when you get into that kind of an analysis, that's where you're looking at the Scott v. Harris, the Fourth Amendment reasonableness analysis. And the reason that analysis does not apply here is because there was no — there was only an attempt to seize. There was no seizure. And as Lewis points out and Scott v. Harris points out, there's only a seizure and a Fourth Amendment standard applies when there's an actual interference with the car's movement, like a pit maneuver or spike strips. There's no allegation of that in this case. Also — Would that have made a difference? If there had been a pit maneuver or a — Yes. Then you'd be under the Fourth Amendment reasonableness standard, which is a very different standard. It requires a balancing test, and that's some of the balancing that my counsel had just had — plaintiff's counsel had addressed before, and that doesn't apply here because we're under the Fourteenth Amendment with the purpose-to-harm standard. So if they had blocked the road and impeded the car's forward progress, that would have been a Fourth Amendment violation? Correct. And that's because in order to get to the Fourth Amendment standard, you have to have a seizure, not just a pursuit. It has to — you actually have to stop or attempt to stop the moving vehicle by means other than just a — the pursuit of the vehicle. I'd also like to quickly address the Eleventh Amendment issue. Counsel argues that there's been a waiver of the Eleventh Amendment by virtue of the CHP and the State of California engaging in this multi-agency task force. The two cases — there's no evidence of that type of a waiver. And the two cases cited by plaintiff's counsel merely discuss when a separate entity is created subject to perhaps different requirements, subject to suit in one of the cases subject to the Brown Act. There's no evidence here of a separate entity, and neither of those cases dealt with the issue of waiver of the sovereign immunity. In the reply brief, submitted along with the reply brief, is the CHP memo that counsel has discussed. And under that memo, the CHP officers remained employees of the CHP. They were under the direction of the CHP. They were subject to the policies of the CHP. And if you look specifically at paragraphs 3, 7, 8, and 12 of that memo submitted with the reply papers, it specifically states that the CHP officers are subject to the CHP's policies. There is no merger of the CHP with the municipal entities. Also, the CHP was merely engaging in interagency coordination, which it does throughout the State of California. It was not acting outside of its jurisdiction because the CHP is charged with enforcing the rules of the road on all of the highways in California, and highways is defined under the California Vehicle Code to include streets. So the CHP regularly engages in traffic enforcement on streets as well as freeways. So there's nothing here to show that the CHP and the CHP officers were in some way acting as agents or employees of the municipal entities, the L.A. Sheriff Department or the LAPD. And I also want to go back for one second to the Section 1983 claim just to point out that counsel has stated in the court below that he's not able to amend to state a claim under the standard required under Lewis. And he said, I didn't realize I had this intent to harm Prong to overcome, and I don't know how to overcome it. I admit it readily to the court, and that's my argument to the court. And that's in the county appellee's excerpt of record, page 9. And then he also stated to this court that he's done the very best he can with respect to Lewis. And I would submit that the allegations, even if taken as true in this case, don't rise to the standard required by County of Sacramento v. Lewis in the notion. And therefore, the plaintiffs have failed to state a claim under that standard, and an amendment would have been futile. Therefore, the dismissal of the CHP officers for failure to state a claim was appropriate and should be affirmed on appeal. Just briefly, I also wanted to mention that the alternate standard or the alternate grounds for affirmance is a qualified immunity. This Court can also affirm the dismissal of the CHP officers under the qualified immunity, and that's addressed in the briefs. I won't address it further unless you have any questions. Thank you. Good morning, Your Honors. Jennifer Layman on behalf of the County of Los Angeles and the Los Angeles County Sheriff's Department. Just very briefly, I want to point out that there is nothing in the complaint or in any of the documents attached by counsel that would point to any involvement by the county, much less any conduct that would shock the conscience. So unless the Court has any questions, I will submit. Thank you. We'll give you one minute for rebuttal, if you would like. Thank you. I would like that opportunity. All right. Sergeant Frias of the CHP, working under the memo for an interagency task force headquartered out of the City of West Hollywood and out of the County of Los Angeles, he initiated the chase in a congested area of what we now know as zero tolerance. He accelerated to high speeds rather than blocking the car. He failed to call any supervisor, which was discussed in the memo. He failed to call any other units, including police, in front of him, and if you read the large mate report, there must have been about 20 units in the area a block or two blocks away. He failed to call helicopters, which had become pretty much now the norm for the L.A. Sheriff's Department and the LAPD. And, of course, there was no training of the CHP assets at all into the LAPD or LASD policies, as I've just enunciated. I forgot to bring up to the Court's attention that this case was, of course, dismissed on a 12B6 motion right away at the very beginning, and that certainly the one cognizable legal theory in front of the Court is the fact that this is a municipal task force and there were CHP assets assigned to it. I think that's an issue the Court ought to consider. Thank you, counsel. Thank you. The case disargued will be submitted.
judges: D.W. Nelson, Reinhardt, Rymer